**UNITED STATES DISTRICT COURT**
**DISTRICT OF MARYLAND**

| | |
|---|---|
| IMPACTOFFICE, LLC, | |
| Plaintiff, | |
| v. | Civil Action No. TDC-15-3481 |
| SAMUEL SINIAVSKY, | |
| Defendant. | |
| DENNIS CHAPMAN and ERICA KNOTT, | |
| Plaintiffs, | |
| v. | Civil Action No. TDC-16-1851 |
| IMPACTOFFICE LLC, | |
| Defendant. | |

**MEMORANDUM OPINION**

On October 23, 2015, ImpactOffice, LLC ("Impact" or "the Company") filed a civil action against its former employee, Samuel Siniavsky, alleging breach of contract arising from violations of an employment agreement between Impact and Siniavsky. On December 9, 2015, Siniavsky filed an Amended Answer and Counterclaim alleging, *inter alia*, that the customer non-solicitation covenant in the agreement is unenforceable. In a separate but related civil action filed on June 3, 2016, former Impact employees Dennis Chapman and Erica Knott filed suit against Impact seeking a declaratory judgment that the restrictive covenants in any employment agreements they have with Impact are unenforceable as a matter of public policy. Pending

before the Court are Siniavsky's Motion for Judgment on the Pleadings and Chapman's Motion for Judgment on the Pleadings. The Court has reviewed the pleadings and briefs and held a joint hearing on October 24, 2016. For the following reasons, Siniavsky's Motion is granted, and Chapman's Motion is granted in part and denied in part.

## BACKGROUND

Impact is a national supplier of office products, office furniture, printing services, and related goods and services that delivers its products directly to customers. Impact alleges that its business is dependent in large part on its sales representatives' personal relationships with customers and potential customers. Siniavsky worked as a sales representative for Impact in New Jersey and the Philadelphia metropolitan area between August 2010 and April 2015, when he voluntarily resigned. Chapman was an Impact sales representative between 2012 and May 2016, at which time he voluntarily resigned.

While working at Impact, Siniavsky and Chapman signed individual Proprietary and Nonsolicitation Agreements ("the Agreements") that include post-employment restrictions relating to potential competition with Impact or its "Affiliates." Under the Siniavsky Agreement, Impact's Affiliates consist of: Impact Office Products, LLC; George W. Allen Co.; DeskMate; N.B.A.; and Councell Computer Products. Under the Chapman Agreement, Impact's Affiliates consist of: ImpactOffice Group, LLC; Impact Office Products, LLC; George W. Allen Co.; N.B.A.; and Councell Computer Products. Both Agreements contain a customer non-solicitation provision, under which the employee not permitted to:

> Solicit or accept, directly or indirectly, the business of any customer or prospective customer of the Company or its Affiliates for the purpose of selling or distributing office products or services sold by the Company or its Affiliates within 12 months of the date of the cessation of the Employee's employment with the Company.

2

Siniavsky Agreement ¶ 2.2, Impact Compl. Ex. 1, ECF No. 2-1; Chapman Agreement ¶ 2.2, Chapman Compl. Ex. A, ECF No. 1-1, Mot. J. Pleadings Ex. A, ECF No. 26-2.  "Customer" is defined as "any person or business to whom the Company or its Affiliates sold products or rendered services during the last 12 months Employee was employed by the Company." Siniavsky Agreement ¶ 2.2; Chapman Agreement ¶ 2.2.

The Chapman Agreement also includes a non-competition provision, which applies only if the employee voluntarily leaves Impact.  The provision states that a former employee may not:

> Become employed by a competitor . . . of the Company or its Affiliates located within a radius of ninety miles from any location of the Company or its Affiliates, within 6 months of the date of the cessation of the Employee's employment with the Company.

Chapman Agreement ¶ 2.3.  "Competitor" is defined as companies that "sell office supplies, coffee & breakroom supplies, computer supplies, office furniture, printer maintenance repair and service, and any other products and services sold by the Company or its Affiliates." *Id.*

Both Agreements contain two other provisions relevant to the resolution of the Motions: a choice-of-law clause and a severability clause.  The former states that the Agreement "shall be governed by and construed and enforced in accordance with the laws of the State of Maryland." Siniavsky Agreement ¶ 5.4; Chapman Agreement ¶ 5.4.  The latter provides that:

> The Employee agrees that to the extent that any provision or portion of this Agreement shall be held, found or deemed to be unlawful or unenforceable by a court of competent jurisdiction, then any such provision or portion shall be deemed to be modified to the extent necessary in order that any such provision or portion shall be legally enforceable to the fullest extent permitted by applicable law; and the Employee does further agree that any court of competent jurisdiction shall, and the Employee does hereby expressly authorize, request and empower any court of competent jurisdiction to, enforce any such provision or portion in order that any such provision or portion shall be enforced by such court to the fullest extent permitted by applicable law.

Siniavsky Agreement ¶ 4.1; Chapman Agreement ¶ 4.1.

3

Siniavsky and Chapman are now employed by W.B. Mason Company, Inc., which also sells office supplies, office furniture, printing services, and related goods and services. Impact alleges that W.B. Mason is its direct competitor in the Philadelphia metropolitan area. Impact also claims that Siniavsky has "solicited business and accepted business from multiple Impact customers." Impact Am. Compl. ¶ 21.

## DISCUSSION

Siniavsky and Chapman both argue that the restrictive covenants within their employment agreements with Impact are unenforceable because they are facially overbroad, such that they are entitled to a judgment as a matter of law. Chapman asserts that the non-competition provision as written is overbroad because the term "competitor" is defined too broadly and the geographic restriction and scope of proscribed activity are both unreasonable. Siniavsky and Chapman both assert that the customer non-solicitation provision's prohibition on soliciting or even merely accepting business from any customers or prospective customers of Impact or its Affiliates, including those with whom they had no contact while employed by Impact, renders that covenant overbroad. Moreover, Siniavsky and Chapman argue that the Court cannot make these provisions enforceable by narrowing their scope through the use of "blue penciling" or the application of the severability provision in the Agreements.

## I.    Legal Standard

Federal Rule of Civil Procedure 12(c) provides that "a party may move for judgment on the pleadings" after the pleadings have been filed. Fed. R. Civ. P. 12(c). On a motion for judgment on the pleadings, the court considers the pleadings, which consist of the complaint, the answer, and any written instruments attached to those filings, as well as any documents that are "integral to the complaint and authentic." *Occupy Columbia v. Haley*, 738 F.3d 107, 116 (4th

Cir. 2013) (quoting *Phillips v. Pitt Cty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009)).  In resolving a Rule 12(c) motion on the basis of the underlying merits, the court assumes the facts alleged by the nonmoving party to be true and draws all reasonable factual inferences in its favor, and judgment is appropriate only if the moving party establishes that no genuine issue of material fact remains to be resolved and that the party is entitled to judgment as a matter of law. *See, e.g., Sanders v. Mountain America Fed. Credit Union*, 689 F.3d 1138, 1141 (10th Cir. 2012); *United States v. Any & All Radio Station Transmission Equip.*, 207 F.3d 458, 462 (8th Cir. 2000); *Alexander v. City of Chicago*, 994 F.2d 333, 336 (7th Cir. 1993); *Bell Atlantic-Maryland, Inc. v. Prince George's Cty.*, 155 F. Supp. 2d 465, 473 (D. Md. 2001).  Such a motion can be used to obtain a declaratory judgment where the only dispute is the proper interpretation of contractual terms. *See Hous. Auth. Risk Retention Grp., Inc. v. Chi. Hous. Auth.*, 378 F.3d 596, 598 (7th Cir. 2004); *A. S. Abell Co. v. Balt. Typographical Union No. 12*, 338 F.2d 190, 193-95 (4th Cir. 1964).

## II.    Choice of Law

A federal court exercising diversity jurisdiction applies the choice-of-law rules of the state in which it sits. *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941). Maryland law recognizes the "ability of contracting parties to specify in their contract that the laws of a particular State apply in any dispute over the validity, construction, or enforceability of the contract," with limited exceptions that do not apply here. *See Jackson v. Pasadena Receivables, Inc.*, 921 A.2d 799, 803-04 (Md. 2007).  Because the Agreements both include choice-of-law provisions selecting Maryland law, and neither party advocates for the application of a different state's law, the Court applies Maryland law in resolving the Motions.

### III.    Enforceability of the Restrictive Covenants

Under Maryland law:

[F]or a restrictive covenant to be enforceable (1) the employer must have a legally protected interest, (2) the restrictive covenant must be no wider in scope and duration than is reasonably necessary to protect the employer's interest, (3) the covenant cannot impose an undue hardship on the employee, and (4) the covenant cannot violate public policy.

*Deutsche Post Glob. Mail, Ltd. v. Conrad*, 116 F. App'x 435, 438 (4th Cir. 2004) (citing *Silver v. Goldberger*, 188 A.2d 155, 158-59 (Md. 1963); *Holloway v. Faw, Casson & Co.*, 572 A.2d 510, 515-16 (Md. 1990)).  The "determination of enforceability should be made based on the scope of each particular covenant itself, and, if that, on its face, is not too broad, the facts and circumstances of each case must be examined." *Millward v. Gerstung Int'l Sport Educ., Inc.*, 302 A.2d 14, 16 (Md. 1973).

Maryland courts have recognized an employer's legally protected interest in preventing "diversion of . . . business to the former employee who has had personal contacts with customers which the employer lacks." *Tuttle v. Riggs-Warfield-Roloson*, 246 A.2d 588, 590 (Md. 1968); *see Silver v. Goldberger*, 188 A.2d 155, 158 (Md. 1963). "Persons in business have a protectable interest in preventing an employee from using the contacts established during employment to pirate the employer's customers." *Holloway v. Faw, Casson & Co.*, 572 A.2d 510, 515 (Md. 1990).  The goal of preventing the departure of goodwill generated by the former employee is distinguished from that of preventing efficient competition, which is not a legally protected interest. *See Silver*, 188 A.2d at 158.  Here, Impact's sales representatives interact directly with customers and may establish personal relationships with them.  Viewing the facts in the light most favorable to Impact, the Court finds for purposes of the Motions that Impact has a legally protected interest in its customer goodwill. *See Deutsche Post Glob. Mail, Ltd.*, 116 F. App'x at

438 ("Restrictive covenants almost always serve a legitimate employer interest when they restrict former salespersons who serviced, solicited, and were in constant contact with customers." (citing *Silver*, 188 A.2d at 158)). The restrictive covenants at issue will be analyzed in turn in light of this interest.

### A.    Non-Competition Provision

The non-competition covenant prohibits Chapman, for six months, from working at a competitor of Impact or its Affiliates within a 90-mile radius of any location of Impact or one of its Affiliates. The scope of the proscribed activity is not limited to employment in positions similar to that which Chapman held at Impact but instead would prohibit employment in any capacity at a competitor. The restriction is therefore wider than necessary and is not reasonably tailored to protect Impact's interest in preventing the loss of customer goodwill.

In this District, similar non-competition provisions have been deemed unenforceable under Maryland law due to overbreadth. For example, in *Medispec, Ltd. v. Chouinard*, 133 F. Supp. 3d 771 (D. Md. 2015), the court held that a non-competition covenant that prohibited a former employee "from taking any job, no matter how unrelated to his prior sales work" with a direct or indirect competitor of the company or its affiliates and subsidiaries was "overly broad and not reasonably targeted to achieve Plaintiff's stated interest in protecting its goodwill." *Id.* at 775; *accord Seneca One Finance, Inc. v. Bloshuk*, No. RWT-16-cv-1848, 2016 WL 5851626, at *3 (D. Md. Oct. 5, 2016) (holding that a non-competition provision prohibiting the former employee from engaging in the "same or similar business" as the company was too "sweeping" to be enforceable because the restriction "is not limited to the work" that the former employee performed at the company, "is far wider in scope than is reasonably necessary to protect the goodwill that [she] may have created with Seneca One customers," and "serves only to limit her

7

potential employers"); *MCS Servs. v. Jones*, No. WMN-10-1042, 2010 WL 3895380, at *4 (D. Md. Oct. 1, 2010) (finding overbroad a restriction that prevented the former employee, a manager and sales representative, "from working for any competitor, regardless of whether his new responsibilities seek to exploit [the employer's] goodwill").

The United States Court of Appeals for the Fourth Circuit has, in analogous contexts, applied this same reasoning. In applying Maryland law to a restrictive covenant prohibiting former employees from engaging "in any activity which may affect adversely" the employer's interests, the Fourth Circuit held that the provision was exceedingly overbroad because it "seem[ed] designed to prevent any kind of competition" as opposed to being "specifically targeted at preventing [the employees] from trading on the goodwill they created." *Deutsche Post Glob. Mail, Ltd.*, 116 F. App'x at 437-38. In *RLM Communications, Inc. v. Tuschen*, 831 F.3d 190 (4th Cir. 2016), the court applied this reasoning to a non-competition agreement governed by North Carolina law which forbade the former employee from "directly or indirectly participat[ing] in a business that is similar to a business now or later operated by Employer in the same geographical area." *Id.* at 196. The court concluded that the prohibition was overbroad because "[i]nstead of focusing on employment that raises the risk that [the former employee] will use knowledge obtained from" the former employer to that company's detriment, "the Noncompete targets the similarity of a new employer" to the former employer. *Id.* at 197.

Here, the Impact non-competition covenant similarly focuses on the nature of the competitor rather than the work performed by the former employee. The language of the provision would bar Chapman from working for an Impact competitor in any position, even if that position afforded him no opportunity to take advantage of any personal relationships with customers that he had developed while at Impact. Such a provision does not reflect a narrowly

tailored approach to safeguarding customer goodwill. Instead, the exceedingly broad language serves as a general hindrance to competition, an unprotected interest. The Court therefore concludes that the non-competition provision is facially overbroad and thus unenforceable. *See, e.g., Medispec, Ltd.*, 133 F. Supp. 3d at 775.

Having so found, the Court need not address Chapman's additional arguments that the provision's definition of competitor and its geographic limitation are sufficiently overbroad as to render the provision unenforceable.

### B. Non-Solicitation Provision

The non-solicitation provision in the Impact Agreements prohibits Siniavsky and Chapman from:

> Solicit[ing] or accept[ing], directly or indirectly, the business of any customer or prospective customer of the Company or its Affiliates for the purpose of selling or distributing office products or services sold by the Company or its Affiliates within 12 months of the date of the cessation of the Employee's employment with the Company

Siniavsky Agreement ¶ 2.2; Chapman Agreement ¶ 2.2. Siniavsky and Chapman contend that the bar on accepting business and the application of the provision to "any customer or prospective customer" render the covenant facially overbroad. The Court agrees that provision is facially overbroad in two ways: by prohibiting a former employee from (1) "accept[ing]" business from any Impact customer and (2) soliciting business from any "prospective customer" of Impact.

These restrictions go well beyond what is reasonably necessary to protect Impact's legally recognized interest in safeguarding customer goodwill. First, the restriction on accepting business from Impact customers is unreasonable because an employer's protectable interest is in "preventing an employee from *using* the contacts establishing during employment to pirate the

9

employer's customers." *Holloway*, 572 A.2d at 515 (emphasis added). A bar on mere passive acceptance of unsolicited business prohibits activity that necessarily involved no use of prior customer relationships. Although Impact argues that this provision protects against former employees circumventing the non-solicitation restriction by orchestrating the placement of orders by their former Impact customers without any formal solicitation, it sweeps well beyond such activity. Under this provision, a former employee would breach the agreement by taking an unsolicited telephone order from any company that had previously bought office supplies from Impact, even if the former employee had never interacted with that company and had no knowledge of its prior dealings with Impact. Without any requirement that the former employee have such knowledge, the bar on accepting business is not reasonably tailored to address that concern.

Impact's citation of *Holloway* for the proposition that the "accept" term is not facially overbroad is unpersuasive. The agreement in *Holloway*, which was primarily a non-competition agreement for a former partner in an accounting firm, contained a liquidated damages provision requiring the repayment of fees paid by the accounting firm's clients who "engage the services of the withdrawing partner." *Id.* at 512. Neither the Maryland Court of Appeals nor the Court of Special Appeals, however, addressed any argument that this particular provision was overbroad with respect to the acceptance of business where the former employee did not affirmatively solicit clients. *See Holloway*, 572 A.2d at 513-14, 522-26.

Second, the bar on soliciting Impact's "prospective customers," which includes those with whom the former employee may have had no personal contact, further renders the non-solicitation provision overbroad. *See Hebb v. Stump, Harvey & Cook, Inc.*, 334 A.2d 563, 570 (Md. Ct. Spec. App. 1975) (finding that the trial court correctly determined that a restriction on

10

solicitation of "prospective customers" was unenforceable); *see also Seneca One Fin., Inc.*, 2016 WL 5851626, at *5 (finding a restriction on solicitation of individuals or entities who "have been in contact" with the employer about potential business to be "breathtaking in scope" and overbroad). A prospective customer, under the plain meaning of the term, has not previously done business with Impact and thus would not have been the subject of customer goodwill generated by a former Impact sales representative. Moreover, the term "prospective customer" of Impact would encompass virtually any company with a need to purchase office supplies, even if the former employee had no knowledge that the company had ever interacted with Impact, and even if the company had never interacted with Impact at all. At the hearing on the Motions, counsel for Impact in both cases before the Court effectively conceded that this restriction is overbroad.

Siniavsky and Chapman further argue that the restriction on soliciting all "customers" of Impact and its Affiliates is facially overbroad. Agreements that restrict former employees from soliciting all clients of a former employer, rather than only those with whom the former employer worked directly, are generally disfavored by Maryland courts. *See PADCO Advisors, Inc. v. Omdahl*, 179 F. Supp. 2d 600, 608 (D. Md. 2002); *see also Severn Mktg. Assocs., Inc. v. Doolin*, No. CCB-09-3295, 2010 WL 3834994, at *4 (D. Md. Sept. 29, 2010). Impact argues that the Maryland Court of Appeals has upheld restrictive covenants prohibiting solicitation of all customers of a company, without limitation. The primary cases offered by Impact, however, did not actually involve such a broad non-solicitation agreement. In *Tuttle v. Riggs-Warfield-Roloson, Inc.*, 246 A.2d 588 (Md. 1968), although there was a restrictive covenant barring a former employee "from engaging directly or indirectly, in any insurance activities with customers" of Riggs-Warfield-Roloson, the basis for the action was the alleged violation of a

modification to that covenant that narrowed the restriction to a specific former client company. *Id.* at 589-90. The court's holding that the former employee's solicitation of that particular client breached the contract therefore does not support the broad proposition that restrictions on solicitation of all customers cannot be deemed facially overbroad. *Id.* at 590-91. Likewise, in *Gill v. Computer Equipment Corporation*, 292 A.2d 54 (Md. 1972), the court upheld a restrictive covenant against "selling or servicing the products" of a manufacturer represented by the company's Peripheral Systems Division. *Id.* at 58-59. In so doing, however, the court highlighted that the "scope of the limitation" was to customers of that Division, which was "the narrow area" in which the former employee worked, not the entire company. *Id.* at 59.

Nevertheless, Impact correctly notes that courts interpreting Maryland law have adopted the view that a restrictive covenant barring solicitation of all of a company's customers is not facially overbroad, but must instead be reviewed with consideration of the specific facts and circumstances at issue. *See Fowler v Printers II, Inc.*, 598 A.3d 794, 802 (Md. Ct. Spec. App. 1991); *Holloway v. Faw, Casson & Co.*, 552 A.2d 1311, 1321 (Md. Ct. Spec. App. 1989), *rev'd in part on other grounds*, 572 A.2d 510 (Md. 1990). In this District, courts have upheld certain non-solicitation clauses applying to all customers of a company under the specific facts of the case. For example, in *Severn Marketing Associates, Inc.*, the court held that a provision barring solicitation of any of the company's "Principals," consisting of manufacturing companies to whom the company provided sales and marketing services, was not facially overbroad where there was an allegation that the former employee in fact had had contact with all 16 of the company's Principals. 2010 WL 3834994, at *4-5 (denying a motion to dismiss); *see also Allegis Grp., Inc. v. Jordan*, No. GLR-12-2535, 2014 WL 2612604, at *8 (D. Md. June 10, 2014) (finding a covenant barring solicitation of any company client over the past two years to be

"reasonable and enforceable" on the facts of the case). Thus, the Court declines to hold that non-solicitation clauses barring solicitation of all customers are facially overbroad as a matter of law. Nevertheless, the non-solicitation clauses are facially overbroad because they do not permit a former employee to "accept" business or to solicit "prospective customers."

## IV.    Blue Penciling

If a court finds that a restrictive covenant is overbroad, it may nevertheless preserve and enforce the covenant by excising, or "blue penciling," unreasonable language. *Deutsche Post Glob. Mail, Ltd.*, 116 F. App'x at 439 (citing *Tawney v. Mut. Sys. of Md.*, 47 A.2d 372, 379 (Md. 1946)). "A court may only blue pencil a restrictive covenant if the offending provision is neatly severable." *Id.* In particular, a court may not excise "the dominant language or words" from a covenant that is part of a "single indivisible promise." *Id.* at 440 (holding that excising an overarching promise in a single-sentence restrictive covenant, "leaving only a narrower example of the original, broader restriction," was impermissible). Moreover, a court cannot supplement, rearrange, or otherwise rewrite language. *See Fowler*, 598 A.2d at 802 ; *see also Deutsche Post Glob. Mail, Ltd.*, 116 F. App'x at 439. Although Impact urges the Court to apply the "flexible approach" to blue penciling under which a court may add language or rewrite a covenant to conform to the parties' reasonable expectations, the Maryland Court of Appeals has not adopted the flexible approach. *Deutsche Post Glob. Mail, Ltd.*, 116 F. App'x at 440 (stating that the Maryland Court of Appeals in *Holloway* expressly refused to address the validity of the approach and noting that "no Maryland court has [since] endorsed or discussed the flexible approach").

Here, the non-competition covenant in the Chapman Agreement cannot be blue penciled to render it reasonable.   There is no language that can neatly be stricken to address its overbreadth.  Instead, preserving the non-competition provision would require supplementing the

contract language to narrow the scope of the proscribed activity. The Court might, for example, have to add language limiting the restriction to certain types of positions consistent with Chapman's prior work at Impact. Such a change would constitute an impermissible rewriting of the contract.

As for the customer non-solicitation restrictions in both Agreements, the Court concludes that the "or accept" and "or prospective customer" restrictions can be excised under the blue pencil rule as applied under Maryland law. In *Hebb*, the court rejected the argument that a finding that a covenant's overbroad restriction on solicitation of prospective customers rendered the entire agreement unenforceable and instead upheld the blue penciling of a reference to "prospective customers who were being actively solicited by us" at the time of termination and the subsequent enforcement of the provision as to existing customers only. 334 A.2d at 570-71. The Court of Special Appeals has also concluded that language extending non-solicitation restrictions beyond existing customers to businesses who "shall have submitted a bid" or were "in the process of submitting a bid" could be blue penciled "entirely in accord with Maryland law." *Fowler*, 598 A.2d at 802. The potential excisions in this case are likewise "not so interwoven as to be logically inseparable." *Hebb*, 334 A.2d at 569; *cf. SNS One, Inc. v. Hage*, No. L-10-1592, 2011 WL 2746713, at *2 (D. Md. July 11, 2011) (excising, from a covenant barring a former employee from working for or associating with other businesses "competitive" with the company, a restriction on such activities with companies that were "the same as" or "similar to" the company). Notably, these limited excisions would not remove the dominant language in the provision. *See Deutsche Post Glob. Mail, Ltd.*, 116 F. App'x at 440.

The severability clause of the Agreements does not provide a basis to go any further. That provision states that any unenforceable provision "shall be deemed to be modified to the

extent necessary . . . to be legally enforceable *to the fullest extent permitted by applicable law*" and that the former employee "authorize[s], request[s], and empower[s] any court of competent jurisdiction" to enforce any provision or portion of the agreement found to be unenforceable "*to the fullest extent permitted by applicable law*." Siniavsky Agreement ¶ 4.1 (emphasis added); Chapman Agreement ¶ 4.1 (emphasis added). Because Maryland law provides that alterations to the contract are limited by the blue penciling doctrine, and this provision does not authorize severance that goes beyond the bounds of Maryland law, it does not provide a basis to permit any modifications beyond the blue penciling described above.

Thus, the Court utilizes blue penciling to excise language that renders the non-solicitation provision facially overbroad and is left with the following provision stating that the former employee may not:

> Solicit ~~or accept~~, directly or indirectly, the business of any customer ~~or prospective customer~~ of the Company or its Affiliates for the purpose of selling or distributing office products or services sold by the Company or its Affiliates within 12 months of the date of the cessation of the Employee's employment with the Company.

## V.     Facts and Circumstances

Because the remaining non-solicitation clause, which bars solicitation of "any customer" of Impact or its Affiliates, is not overbroad on its face, an examination of the facts and circumstances of the two cases is necessary.

### A.     Siniavsky

With respect to Siniavsky, the facts presented in Impact's own pleadings, as confirmed at the October 24, 2016 hearing, establish that the scope of the customer non-solicitation provision is "wider . . . than is reasonably necessary to protect the employer's interest." *Deutsche Post Glob. Mail, Ltd.*, 116 F. App'x at 438 (citing *Silver*, 188 A.2d at 158-59; *Holloway*, 572 A.2d at

515-16). According to the Amended Complaint, Impact is "a national supplier" of office products and related goods and services and specifically "transacts business throughout the state of Maryland." Siniavsky Am. Compl. ¶¶ 4, 8. Siniavsky, however, worked "in New Jersey and the Philadelphia metropolitan area" and worked in this "territory" throughout his tenure with Impact. *Id.* ¶ 11. There is no allegation that Siniavsky ever conducted Impact sales activity in Maryland or any other territory beyond New Jersey and the Philadelphia metropolitan area, or that he ever conducted sales for any of the five Impact "Affiliates" whose customers he is not permitted to solicit under the Agreement. Even viewed in the light most favorable to Impact, these allegations can only be read to establish that Siniavsky's customer base was only a portion of the national customer base of Impact and its Affiliates, and that there were segments of that customer base with which he never interacted. At the hearing on the Motions, counsel for Impact confirmed that Siniavsky's sales activities covered only a certain geographic area covering less than Impact's entire coverage area and involved only a fraction of Impact's overall customer base. Thus, upon consideration of the undisputed facts, the restrictive covenant barring solicitation of all Impact customers is not reasonably tied to Impact's interest in protecting customer goodwill because it covers a larger customer base than that with which Siniavsky could have developed personal relationships.

Courts applying Maryland law to the facts and circumstances surrounding restrictive covenants regularly deem those that restrict solicitation of customers beyond those with whom a former employee engaged in direct business dealings to be overbroad and unenforceable because they serve not to protect goodwill, but to restrict competition. *See, e.g., Ameritox, Ltd. v. Savelich*, 92 F. Supp. 3d 389, 399 (D. Md. 2013) (finding that a restrictive covenant barring solicitation in 13 states was overbroad because the employee never provided any services in two

of those states and thus went "further than is necessary to protect [the employer's] interest in preventing [the employee] from using the goodwill generated during his employment"); *Deutsche Post Glob. Mail, Ltd. v. Conrad*, 292 F. Supp. 2d 748, 755-56 (D. Md. 2003), *aff'd* 116 F. App'x 435 (4th Cir. 2004) (concluding that a restrictive covenant barring solicitation of all company customers was overbroad where the company had a global customer base and the former employees "developed comparatively few customer relationships in the limited area of Maryland, Virginia, and Washington, D.C."); *Holloway*, 552 A.2d at 1319-21 (holding that where a partnership had six offices in Maryland and Delaware but the former employee worked out of only the Salisbury, Maryland office, the partnership agreement was "unreasonable to the extent that it prohibits the employee from soliciting the business of those clients with whom the former employee did not himself have direct contact while employed by the partnership"). Likewise, the non-solicitation clause of the Siniavsky Agreement, which restricts solicitation of all Impact customers without limitation, is overbroad and unenforceable as applied to Siniavsky. As with the non-competition provision, the Court cannot apply blue penciling to narrow the restriction on solicitation to "any customer" without an impermissible supplementation or rewriting of contract language.

Seeking to avoid dismissal, Impact argues that it is necessary to obtain and consider additional facts not currently in the record in order to assess overbreadth and cites *Millward*, which identified several factors to consider in assessing the enforceability of a non-competition clause in an employment contract, including the hardship of the restriction on the employee, whether the employee had solicited customers and was exploiting personal contacts from his former employment, and the interests of the public. 302 A.2d at 16 (listing factors). The factors identified, however, range across the four requirements to establish the enforceability of a

17

restrictive covenant of (1) a legally protected interest, (2) reasonably necessary scope and duration, (3) lack of undue hardship, and (4) consistency with public policy, all of which need to be satisfied. *See Deutsche Post Glob. Mail, Ltd.*, 116 F. App'x at 438. Here, additional facts would not alter the Court's determination that the scope of the restrictive covenant in barring solicitation of all customers of Impact and its Affiliates nationwide goes well beyond what is reasonably necessary. Indeed, courts have found such covenants unenforceable based solely on the finding that the restriction limits more than non-competition or non-solicitation relating to customer goodwill. *See id.* (declining to address the remaining factors upon finding that a restrictive covenant was wider in scope than reasonably necessary); *Medispec*, 133 F. Supp. 3d at 776 n.5 (same). Thus, there is no need to consider the additional factors referenced in *Millward*. Compare *Ameritox*, 92 F. Supp. 3d at 399-400 (citing *Millward* in concluding that consideration of the facts and circumstances was necessary and then determining that the restrictive covenant was overbroad based solely on the comparison of the employer's client base to the area in which the former employee provided services), *with Millward*, 302 A.2d at 17 (concluding that the non-competition covenant was reasonable as to area and duration before considering other factors such as the performance of unique services and whether the former employee had personal contacts with former customers and engaged in direct solicitation).

Finally, Impact claims that even if the non-solicitation clause is overbroad, because it asserted in its brief that it is now waiving any claim to injunctive relief and seeks only monetary damages for solicitation of clients with whom Siniavsky had direct interactions, the Court should construe the Agreement as applying only to this subset of Impact customers. Such a rule, however, would conflict with the limits on judicial modification of a restrictive covenant delineated in the blue penciling doctrine. Indeed, in *Deutsche Post Global Mail*, the employer

made essentially the same request made by Impact here to narrow the scope of review to instances of solicitation of customers with whom the former employee had prior contact and to "focus solely on the facts of each alleged breach to determine whether an award of damages would be reasonable." 116 F. App'x at 441.   The Fourth Circuit rejected the employer's approach in part because under that proposed interpretation of Maryland law, "an employer could draft a covenant that is unreasonably broad in scope, knowing that it could recover damages for any breach held to violate an interest that was reasonably deserving of protection," thereby giving "employers no incentive to negotiate reasonable restrictive covenants in the first place." *Id.* The court distinguished the Maryland Court of Appeals decision in *Holloway*, relied upon by Impact here, as not having applied such a judicial narrowing but instead having simply noted *in dicta* that the damages awarded in that case were limited to those arising from solicitation of persons actually served by the former employee at his former company. *Deutsche Post Glob. Mail, Ltd.*, 116 F. App'x at 441 (discussing *Holloway*).   Here, to permit Impact to reframe its claim, without even amending its Complaint, in order to avoid a finding of overbreadth would likewise provide no incentive for Impact or other employers to tailor their restrictive covenants narrowly to those reasonably protectable interests.

Based on its finding of overbreadth, the Court grants Siniavsky's Motion for Judgment on the Pleadings.

### B.      Chapman

With respect to Chapman, however, the facts before the Court are insufficient to make a determination whether the provision's bar on solicitation of "any customer" of Impact or its Affiliates is wider than reasonably necessary to safeguard Impact's legally protected interest. Chapman's Amended Complaint does not describe the geographic breadth of Impact's business,

nor does it indicate the extent to which Chapman's sales activities were limited to a particular geographic territory or other subset of Impact's overall customer base. Although the Amended Complaint alleges that the office products business is a commodity business in which competition is mainly based on price and generally does not involve trade secrets or proprietary information, Impact denies these claims in its Answer.   On a motion for judgment on the pleadings, the court views the facts in the light most favorable to the nonmoving party, which in this case is Impact.   Contrary to Chapman's contention, Impact does not bear the burden of presenting facts relevant to overbreadth at this stage of the litigation.   Consequently, the Court currently lacks sufficient facts and circumstances upon which to reach a conclusion whether a non-solicitation clause barring solicitation of "any customer" of Impact or its Affiliates is overbroad as to Chapman.

The Court therefore denies Chapman's Motion for Judgment on the Pleadings as it relates to the non-solicitation clause, but it will limit discovery initially to facts relevant to the question whether that clause is wider in scope than is reasonably necessary to protect Impact's legally recognized interest in customer goodwill.

## CONCLUSION

For the foregoing reasons, Siniavsky's Motion for Judgment on the Pleadings is GRANTED, and Chapman's Motion for Judgment on the Pleadings is GRANTED IN PART and DENIED IN PART.   As to Chapman, the Motion is granted in that the Court concludes that (1) the non-competition clause is facially overbroad and unenforceable, and (2) the portions of the non-solicitation clause barring Chapman from merely accepting business from Impact customers or soliciting a "prospective customer" of Impact are excised as facially overbroad.   The Motion is denied in that the Court concludes that the restriction on solicitation of "any customer" of

Impact or its Affiliates remains intact and cannot be evaluated for overbreadth without additional facts and circumstances.  A separate Order shall issue.


Date: November 18, 2016

THEODORE D. CHUANG
United States District Judge