# UNITED STATES DISTRICT COURT
# DISTRICT OF MARYLAND

| | |
|---|---|
| IMPACTOFFICE, LLC,<br><br>    Plaintiff,<br><br>v.<br><br>SAMUEL SINIAVSKY,<br><br>    Defendant. | Civil Action No. TDC-15-3481 |
| DENNIS CHAPMAN,<br><br>    Plaintiff,<br><br>v.<br><br>IMPACTOFFICE LLC,<br><br>    Defendant. | Civil Action No. TDC-16-1851 |

**MEMORANDUM OPINION**

On October 23, 2015, ImpactOffice, LLC ("Impact") filed a civil action against its former employee, Samuel Siniavsky, alleging breach of contract arising from violations of an employment agreement between Impact and Siniavsky. On December 9, 2015, Siniavsky filed an Answer and Counterclaim alleging that the customer non-solicitation covenant in the agreement is unenforceable and asserting breach of contract and fraud counterclaims relating to Impact's application of its compensation plan. In a separate but related civil action filed on June 3, 2016, former Impact employee Dennis Chapman filed suit against Impact seeking a

declaratory judgment that the restrictive covenants in any employment agreement he had with Impact are unenforceable as a matter of public policy.[1]

Siniavsky and Chapman both filed Motions for Judgment on the Pleadings, arguing that the restrictive covenants within their employment agreements with Impact are unenforceable because they are facially overbroad, such that they are entitled to judgment as a matter of law. On November 18, 2016, the Court issued a Memorandum Opinion and Order granting Siniavsky's Motion for Judgment on the Pleadings and granting in part and denying in part Chapman's Motion for Judgment on the Pleadings. Impact and Chapman then submitted a stipulation containing facts about Chapman's customer base when he worked at Impact. Pending before the Court are Chapman's Renewed Motion for Judgment on the Pleadings and Impact's Motion to Amend Judgment. For the reasons set forth below, both Motions are granted.

## BACKGROUND

The factual background underlying this case is generally set forth in the Court's Memorandum Opinion of November 18, 2016. Mem. Op., *ImpactOffice, LLC v. Siniavsky*, ECF No. 43; Mem. Op., *Chapman v. ImpactOffice, LLC*, ECF No. 48. The Court therefore summarizes here only those facts pertinent to the resolution of the pending Motions.

### I. Restrictive Covenants

Impact is a national supplier of office products with a coverage area that generally includes Maryland, the District of Columbia, Virginia, Pennsylvania, and New Jersey. Impact and its affiliated companies have over 1,000 customers and generated approximately $60 million in sales revenue in 2016. Siniavsky worked as a sales representative for Impact in New Jersey

---

[1] The Complaint and Amended Complaint also included former Impact employee Erica Knott as a plaintiff. On December 2, 2016, the Court dismissed Knott's claim pursuant to the parties' Notice of Dismissal.

2

and the Philadelphia metropolitan area between August 2010 and April 2015, when he voluntarily resigned. Chapman was an Impact sales representative who primarily serviced customers in northern Virginia and the District of Columbia, with limited activity in Maryland, between 2012 and May 2016, at which time he voluntarily resigned. In the 12 months before Chapman left Impact, he generated approximately $853,000 in sales. Chapman's customer base at the time of his departure consisted of approximately 87 customers, including eight customers in Maryland. Siniavsky and Chapman are now employed by W.B. Mason Company, Inc., a competitor of Impact.

While working at Impact, Siniavsky and Chapman signed individual Proprietary and Nonsolicitation Agreements ("Agreements") that include post-employment restrictions relating to potential competition with Impact or its affiliated companies. Specifically, both Agreements contain a customer non-solicitation provision, under which the employee is not permitted to:

> Solicit or accept, directly or indirectly, the business of any customer or prospective customer of the Company or its Affiliates for the purpose of selling or distributing office products or services sold by the Company or its Affiliates within 12 months of the date of the cessation of the Employee's employment with the Company.

Siniavsky Agreement ¶ 2.2, Impact Compl. Ex. 1, ECF No. 2-1; Chapman Agreement ¶ 2.2, Chapman Compl. Ex. A, ECF No. 1-1, Renewed Mot. J. Pleadings Ex. A, ECF No. 62-2. "Customer" is defined as "any person or business to whom the Company or its Affiliates sold products or rendered services during the last 12 months Employee was employed by the Company." Siniavsky Agreement ¶ 2.2; Chapman Agreement ¶ 2.2. Under the Chapman Agreement, Impact's Affiliates consisted of: ImpactOffice Group, LLC; Impact Office Products, LLC; George W. Allen Co.; N.B.A.; and Councell Computer Products. In its November 18, 2016 Memorandum Opinion, the Court found the non-solicitation provision to be facially overbroad and blue penciled the covenant such that a former employee may not:

> Solicit ~~or accept~~, directly or indirectly, the business of any customer ~~or prospective customer~~ of the Company or its Affiliates for the purpose of selling or distributing office products or services sold by the Company or its Affiliates within 12 months of the date of the cessation of the Employee's employment with the Company.

Mem. Op. 15.

## II. Compensation

Siniavsky's Counterclaim alleges that Impact improperly deprived him of certain compensation. Impact informed its sales representatives that its compensation plan and scheme would provide for compensation based in part on the "gross profit percentages and/or dollars earned by Impact on sales to their assigned customers." Siniavsky Countercl. ¶ 18, ECF No. 10. Impact represented to its employees that gross amounts would be calculated by taking the price charged to its customers and subtracting from it the cost to Impact for those products. Siniavsky alleges that Impact intentionally inflated its costs by using dollar values that exceeded the real costs paid by Impact, causing Siniavsky to receive less in compensation than he would have otherwise. Impact did not disclose to its sales representatives that the inflated cost figures used to calculate compensation were not its real costs. Siniavsky also asserts that Impact wrongly refused to pay him a sales bonus for the month of April 2015. He alleges that Impact did not prorate the gross profit goal, upon which sales bonuses are based in part, for the 17 days in April that he worked. Had Impact done so, Siniavsky maintains, he would have been entitled to a sales bonus.

## DISCUSSION

Chapman's Renewed Motion for Judgment on the Pleadings argues that, with the addition of the facts stipulated to by the parties, the non-solicitation provision's restriction on soliciting any customer of Impact or its Affiliates is overbroad on the facts of this case. Chapman therefore contends that the Court should enter judgment in his favor. In its Motion to

Amend Judgment, Impact asks the Court to amend the November 18, 2016 Order to certify that there is "no just reason for delay" for appeal pursuant to Federal Rule of Civil Procedure 54(b) and enter a final judgment for Siniavsky on Impact's Amended Complaint. The Court addresses each Motion in turn.

### I. Chapman's Renewed Motion for Judgment on the Pleadings

Federal Rule of Civil Procedure 12(c) provides that "a party may move for judgment on the pleadings" after the pleadings have been filed. Fed. R. Civ. P. 12(c). On a motion for judgment on the pleadings, the court considers the pleadings, which consist of the complaint, the answer, and any written instruments attached to those filings, as well as any documents that are "integral to the complaint and authentic." *Occupy Columbia v. Haley*, 738 F.3d 107, 116 (4th Cir. 2013) (quoting *Phillips v. Pitt Cty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009)). In resolving a Rule 12(c) motion on the basis of the underlying merits, the court assumes the facts alleged by the nonmoving party to be true and draws all reasonable factual inferences in its favor, and judgment is appropriate only if the moving party establishes that no genuine issue of material fact remains to be resolved and that the party is entitled to judgment as a matter of law. *See, e.g., Sanders v. Mountain Am. Fed. Credit Union*, 689 F.3d 1138, 1141 (10th Cir. 2012); *United States v. Any & All Radio Station Transmission Equip.*, 207 F.3d 458, 462 (8th Cir. 2000); *Alexander v. City of Chicago*, 994 F.2d 333, 336 (7th Cir. 1993); *Bell Atlantic-Maryland, Inc. v. Prince George's Cty.*, 155 F. Supp. 2d 465, 473 (D. Md. 2001). Such a motion can be used to obtain a declaratory judgment where the only dispute is the proper interpretation of contractual terms. *See Hous. Auth. Risk Retention Grp., Inc. v. Chi. Hous. Auth.*, 378 F.3d 596, 598 (7th Cir. 2004); *A. S. Abell Co. v. Balt. Typographical Union No. 12*, 338 F.2d 190, 193-95 (4th Cir. 1964).

The question presented by the Motion is whether the language in the Chapman Agreement that the employee may not "[s]olicit ~~or accept~~, directly or indirectly, the business of any customer ~~or prospective customer~~ of the Company or its Affiliates for the purpose of selling or distributing office products or services sold by the Company or its Affiliates within 12 months of the date of the cessation of the Employee's employment with the Company" is enforceable. *See* Renewed Mot. J. Pleadings 3 (quoting Mem. Op. 15). Under Maryland law:

> [F]or a restrictive covenant to be enforceable (1) the employer must have a legally protected interest, (2) the restrictive covenant must be no wider in scope and duration than is reasonably necessary to protect the employer's interest, (3) the covenant cannot impose an undue hardship on the employee, and (4) the covenant cannot violate public policy.

*Deutsche Post Glob. Mail, Ltd. v. Conrad*, 116 F. App'x 435, 438 (4th Cir. 2004) (citing *Silver v. Goldberger*, 188 A.2d 155, 158-59 (Md. 1963); *Holloway v. Faw, Casson & Co.*, 572 A.2d 510, 515-16 (Md. 1990)). Here, Impact has a legally protected interest in preventing the "diversion of . . . business to the former employee who has had personal contacts with customers which the employer lacks," *Tuttle v. Riggs-Warfield-Roloson*, 246 A.2d 588, 590 (Md. 1968); *see Silver v. Goldberger*, 188 A.2d 155, 158 (Md. 1963), but the non-solicitation provision is "wider in scope and duration than is reasonably necessary to protect" that interest, *Deutsche Post Glob. Mail, Ltd.*, 116 F. App'x at 438.

As discussed in more detail in the Court's November 18, 2016 Memorandum Opinion, non-solicitation clauses barring solicitation of all customers are not facially overbroad as a matter of law. Mem. Op. 13. Courts interpreting Maryland law have adopted the view that a restrictive covenant barring solicitation of all of a company's customers must instead be reviewed with consideration of the specific facts and circumstances at issue. *See Fowler v Printers II, Inc.*, 598 A.3d 794, 802 (Md. Ct. Spec. App. 1991); *Holloway v. Faw, Casson & Co.*,

552 A.2d 1311, 1321 (Md. Ct. Spec. App. 1989), *rev'd in part on other grounds*, 572 A.2d 510 (Md. 1990). Indeed, judges in this District have upheld certain non-solicitation clauses applying to all customers of a company under the specific facts of the case. *See Severn Mktg. Assocs., Inc. v. Doolin*, No. CCB-09-3295, 2010 WL 3834994, at *4-5 (D. Md. Sept. 29, 2010) (holding that a provision barring solicitation of any of the company's "Principals" was not facially overbroad where there was an allegation that the former employee had contact with all 16 of the company's Principals); *Allegis Grp., Inc. v. Jordan*, No. GLR-12-2535, 2014 WL 2612604, at *8 (D. Md. June 10, 2014) (finding a covenant barring solicitation of any company client over the past two years to be "reasonable and enforceable" on the facts of the case). In its earlier Memorandum Opinion, the Court held that the facts presented in Siniavsky's case established that the scope of the customer non-solicitation provision is "wider . . . than is reasonably necessary to protect the employer's interest," *Deutsche Post Glob. Mail, Ltd.*, 116 F. App'x at 438 (citing *Silver*, 188 A.2d at 158-59); *Holloway*, 572 A.2d at 515-16), but that the facts before the Court as to Chapman were insufficient to make a determination on the enforceability of the same provision. Mem. Op. 19.

Chapman now contends that with the additional facts in the stipulation, the Court is in a position to conclude that the non-solicitation provision in his Agreement is unenforceable. The Court agrees. The parties have stipulated that Chapman's customer base when he left Impact consisted of approximately 87 customers, 79 of which were in northern Virginia and the District of Columbia, where Chapman primarily conducted business, and eight of which were in Maryland. These numbers pale in comparison to the size of the overall customer base of Impact and its Affiliates, which totals over 1,000 customers across the country, including in Pennsylvania and New Jersey. Moreover, the sales from Chapman's customers in the 12 months

7

prior to his resignation from Impact represent less than five percent of the $60 million that Impact and its Affiliates generated last year. These facts establish that the restrictive covenant here covers a larger customer base than that with which Chapman could have developed relationships and instead encompasses significant segments of the customer base with which Chapman never interacted. Where the non-solicitation provision covers customers beyond those with whom Chapman engaged while working for Impact, it serves not to protect goodwill, but to limit competition. *See, e.g., Ameritox, Ltd. v. Savelich*, 92 F. Supp. 3d 389, 399 (D. Md. 2013). Thus, based on the same analysis underlying the Court's determination that the non-solicitation provision in Siniavsky's Agreement was unenforceable, the Court concludes that the non-solicitation provision in the Chapman Agreement is overbroad and unenforceable because it is not reasonably tied to Impact's interest in protecting customer goodwill. *See* Mem. Op. 16-17. Having found that the scope of the restrictive covenant is broader than is reasonably necessary, there is no need to consider additional factors. *See id.* at 17-18. The Court will therefore grant Chapman's Renewed Motion for Judgment on the Pleadings.

## II. Impact's Motion to Amend Judgment

Anticipating that the Court might issue a final judgment as to Chapman, Impact has asked the Court to amend its November 18, 2016 Memorandum Opinion granting Siniavsky's Motion for Judgment on the Pleadings to add a certification that there is no just reason for delay of an appeal and to issue a final judgment dismissing Impact's Amended Complaint. Under Rule 54(b), when "an action presents more than one claim for relief," including counterclaims, a court may enter final judgment as to some of the claims "only if the court expressly determines that there is no just reason for delay." Fed. R. Civ. P. 54(b). In assessing the propriety of entering final judgment, the court must first determine that there is a final judgment, in that it has

rendered a "decision upon a cognizable claim for relief" that is "an ultimate disposition of an individual claim entered in the course of a multiple claims action." *Curtiss-Wright Corp. v. Gen. Elec. Co.*, 446 U.S. 1, 7 (1990) (quoting *Sears, Roebuck & Co. v. Mackey*, 351 U.S. 427, 436 (1956)). Here, the Court's ruling on Siniavsky's Motion for Judgment on the Pleadings ultimately disposes of Impact's Amended Complaint alleging breach of the non-solicitation provision, which was a cognizable claim for relief.

Next, the court must decide "whether there are no just reasons to delay the appeal" of that individual final judgment, taking into account both judicial administrative interests and the equities involved. *Id.* at 8. The United States Court of Appeals for the Fourth Circuit has identified five factors to consider, if applicable, in making that determination:

> (1) the relationship between the adjudicated and unadjudicated claims; (2) the possibility that the need for review might or might not be mooted by future developments in the district court; (3) the possibility that the reviewing court might be obliged to consider the same issue a second time; (4) the presence or absence of a claim or counterclaim which could result in a set-off against the judgment sought to be made final; (5) miscellaneous factors such as delay, economic and solvency considerations, shortening the time of trial, frivolity of competing claims, expense, and the like.

*MCI Constructors, LLC v. City of Greensboro*, 610 F.3d 849, 855 (4th Cir. 2010) (footnote omitted) (quoting *Braswell Shipyards, Inc. v. Beazer East, Inc.*, 2 F.3d 1331, 1335-36 (4th Cir. 1993)). The first factor weighs in favor of finding that there is no just reason for delay. The determination of the enforceability of the non-solicitation provision is independent of Siniavsky's counterclaims for breach of contract and fraud. Those counterclaims are based on the alleged misapplication of Impact's compensation plan for its sales representatives and are not related to the non-solicitation provision deemed unenforceable by the Court's November 18, 2016 ruling. Siniavsky does not argue otherwise.

On the second factor, future developments in the district court, such as the adjudication of Siniavsky's remaining counterclaims, would not moot the need for review of the Court's decision on the non-solicitation provision. Siniavsky unpersuasively contends that a finding on the counterclaim that Impact breached its compensation plan could prevent Impact from enforcing the non-solicitation provision. Although he has cited case law for the propositions that a material breach of a contract can excuse the non-breaching party's further performance of that contract, *Shapiro Engineering Corp. v. Francis O. Day Co.*, 137 A.2d 695, 698 (Md. 1958), and that a party who fails to perform a condition precedent may not sue for specific performance of the contract, *Griffith v. Scheungrab*, 146 A.2d 864, 868 (Md. 1958), these principles are inapplicable here because the non-solicitation provision is not part of the same contract as the compensation plan. The non-solicitation provision is contained in the Proprietary and Nonsolicitation Agreement, which does not refer to, or relate to, Impact's compensation plan. Thus, any finding for Siniavsky on his counterclaims of breach of contract and fraud arising out of the compensation plan would not establish a material breach of the separate agreement containing the non-solicitation provision.

As for the third factor, the reviewing court would not have to consider the same issue a second time within *Siniavsky* because any future appeal of this Court's adjudication of the remaining counterclaims would not place the enforceability of the non-solicitation provision back in front of the court of appeals. In fact, entering final judgment as to the non-solicitation provision would further judicial economy for the court of appeals because it would permit the Fourth Circuit to consider simultaneously the appeals of the Court's rulings in *Siniavsky* and *Chapman* that the non-solicitation provisions in both Agreements are unenforceable. *See Fulmore v. Premier Fin. Corp.*, Nos. JFM-09-2028, JFM-09-2029, JFM-09-2056, JFM-09-2246,

JFM-09-2334, JFM-10-1177, 2011 WL 529612, at *1-2 (D. Md. Feb. 8, 2011) (after issuing a ruling common to 17 cases, entering final judgment on that issue in six cases in which other claims remained to allow for a simultaneous appeal that would promote judicial economy).

The fact that there are other pending cases before this Court that may present similar issues, but have yet to proceed to a ruling on the enforceability of restrictive covenants, does not alter this conclusion. *See Paul v. ImpactOffice LLC*, No. TDC-16-2686 (D. Md. filed July 26, 2016); *Levin v. ImpactOffice LLC*, No. TDC-16-2790 (D. Md. filed Aug. 8, 2016). Rather, prompt review of the rulings on the non-solicitation provisions in *Siniavsky* and *Chapman* would promote judicial efficiency because an appellate ruling would provide guidance to the district court on how to resolve any motions presenting the same or similar issues.

On the fourth factor, because the Court dismissed Impact's Amended Complaint and thus did not award any damages to Impact, any future damages award on Siniavsky's remaining counterclaims would not be set-off against the proposed final judgment. Even if the Fourth Circuit were to reverse this Court's ruling and find the non-solicitation provision to be enforceable, the issue would likely be remanded to the district court to determine damages, which could then be calculated at the same time as any damages to be awarded on the remaining counterclaims.

Finally, miscellaneous factors do not weigh in favor of delaying appeal. Although Siniavsky argues that permitting an appeal of the ruling on the non-solicitation provision separate from the resolution of Siniavsky's remaining counterclaims would increase litigation costs, he fails to consider the conservation of judicial resources that would result from considering simultaneously the appeals of the nearly identical rulings on the non-solicitation provisions in *Siniavsky* and *Chapman*. While the Court acknowledges that "Rule 54(b)

certification is recognized as the exception rather than the norm," *Braswell Shipyards, Inc. v. Beazer East, Inc.*, 2 F.3d 1331, 1335 (4th Cir. 1993), it concludes that the circumstances here support entry of final judgment on the non-solicitation provision rulings. The Court therefore will grant Impact's Motion and amends its November 18, 2016 Order granting Siniavsky's Motion for Judgment on the Pleadings to include the finding that there is no just reason for delay of appeal.

## CONCLUSION

For the foregoing reasons, Chapman's Renewed Motion for Judgment on the Pleadings and Impact's Motion to Amend Judgment are GRANTED. A separate Order shall issue.

Date: April 19, 2017

THEODORE D. CHUANG
United States District Judge